## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEOPLE'S UNITED INSURANCE AGENCY, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL L. COX, <br><br> Defendant. | Civil Action No. 20-12005 |

### COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff People's United Insurance Agency, Inc. ("People's Insurance"), for its Complaint for Declaratory Judgment and Damages against Defendant Michael L. Cox, states as follows:

### NATURE OF THE CASE

1. In April 2016, Defendant Cox and his wife, Kelly Cox, sold an insurance agency which they formed and created, Eagle Insurance Group, LLC ("Eagle"), to People's Insurance, for more than $2.4 million. In exchange for this substantial payment, People's Insurance purchased the assets and goodwill of Eagle via an Asset Purchase Agreement (the "Eagle APA").

2. Contemporaneously with executing the Eagle APA, Cox entered into an Employment Agreement to remain employed by People's Insurance, with ongoing responsibility for marketing People's Insurance's products and services and servicing People's Insurance's customers.

3. Both the Eagle APA and the Employment Agreement between Cox and People's Insurance contain post-employment restrictive covenants, including restrictions on competition in the highly-competitive insurance industry and prohibitions on soliciting of People's Insurance's customers and employees. These material terms were (and remain) of critical importance to People's Insurance in the transaction, as they are necessary to preserve and protect People's

Insurance's purchase of Eagle and to maintain the customer relationships between Cox and the book of business he sold to People's Insurance.

4. Since the sale of Eagle to People's Insurance in April 2016, Cox remained employed by People's Insurance as Senior Vice President. Throughout his employment with People's Insurance, Cox's minimum annual compensation was $275,000, and he made approximately $1.4 million in additional commissions and incentive compensation during that time. In total, People's Insurance has paid (at least) approximately $5 million to Cox pursuant to the Eagle APA and Employment Agreement since 2016.

5. On November 2, 2020, after months of negotiation, AssuredPartners Northeast, LLC ("Assured Partners") closed a deal to purchase the stock of People's Insurance from its former parent company, People's United Bank, NA ("People's Bank"), in a stock sale worth $120 million.

6. Mr. Cox is now attempting to use the transfer of People's Insurance's stock from People's Bank to AssuredPartners as an excuse to cancel his obligations under the Eagle APA and the Employment Agreement.

7. On November 2, 2020—the same day the stock transfer between AssuredPartners and People's Bank closed—People's Bank received a letter from Cox's attorney, Steven Torres. Through Mr. Torres's letter, Cox unilaterally and without prior notice attempted to cancel all of his contractual obligations to People's Insurance, despite the fact that he has received approximately $5 million from People's Insurance since 2016. Mr. Torres stated that "[People's Insurance's] sale of its assets and ceasing its participation in the insurance agency business triggered the termination of Mr. Cox's employment with [People's Insurance]" and thus, according to Cox, he is "released from the restrictions and covenants set forth in . . . the Employment Agreement" and in the Eagle APA.

8. That statement is incorrect. AssuredPartners' purchase of People's Insurance was a ***stock sale***; the transaction therefore did not extinguish People's Insurance or its legal rights and obligations, including its rights under the Eagle APA and Employment Agreement. To the contrary, People's Insurance remains an ongoing business concern, continues to conduct business in the same manner as it did before the stock sale, and will continue to do so. People's Insurance holds licenses to sell insurance and is actively engaged in that business at this moment, as are individual producers who are working on People's Insurance's behalf as employees. All People's Insurance's office locations remain the same as they were before the transaction. All People's Insurance employees remain employed by People's Insurance, are paid by People's Insurance, and have the same jobs, duties, and responsibilities that they held before the transaction took place. Indeed, if Cox had not engaged in this brazen attempt to cancel his contractual obligations despite People's Insurance's continued performance of its obligations, he would still be an employee in good standing of People's Insurance.

9. People's Insurance now seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, *et seq*., stating that the transfer of People's Insurance's stock from People's Bank to AssuredPartners did not trigger a right for Cox to cancel his obligations under the Eagle APA and the Employment Agreement.

## THE PARTIES

10. Cox is an individual believed to reside at 23 Baker Lane, Lakeville, MA 02347.

11. People's Insurance is a Connecticut corporation with its principal place of business located at One Financial Plaza, 755 Main Street, Hartford, CT 06103.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. People's Insurance is a Connecticut corporation with its principal place of business located in Connecticut. Cox is a Massachusetts resident. The amount in controversy exceeds $75,000 because Cox's breaches and threatened breaches of the Employment Agreement and APA would result in losses well in excess of $75,000.

13. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Cox is located in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred here.

## FACTUAL BACKGROUND

### Cox's Sale of Eagle and Subsequent Employment with People's Insurance

14. Cox formerly owned and operated an insurance agency, Eagle, located in Raynham, Massachusetts. Cox founded and owned Eagle with his wife, Kelly Cox.

15. On or about April 6, 2016, People's Insurance purchased the assets and goodwill of Eagle via the Eagle APA.

16. Under the Eagle APA, People's Insurance paid almost $2.5 million to the Coxes in exchange for, among other things, "all of the assets of [Eagle] comprising or used in connection with the Business (except for the Excluded Assets, as defined herein)[.]" Those assets included, but are not limited to: (1) customer accounts and documentation; (2) intangible assets, including the name "Eagle Insurance Group" and its goodwill, Eagle's web domain, and any other intellectual property; (3) Eagle's rights and obligations under its contractual agreements, including "all agreements with insurance carriers, brokers and agencies, and for consulting or advisory services"; (4) physical assets; (5) company records; (6) licenses; and (7) leasehold rights.

17. As a material term of the Eagle APA, and to protect People's Insurance's investment into the assets of Eagle following the transaction, Cox agreed to certain restrictive covenants, including restrictions on: competition in and around Raynham, MA; solicitation of certain People's Insurance policyholders, clients, and employees; and the unauthorized use or disclosure of People's Insurance's confidential information.

18. Contemporaneously with closing the sale of Eagle's assets to People's Insurance, Cox executed an Employment Agreement to remain employed by People's Insurance, for a period of no fewer than five years.

19. The Employment Agreement provides, in pertinent part:

> 1. <u>Employment Covenant</u>.  [People's Insurance] hereby employs [Cox], and [Cox] hereby accepts such employment under the terms and conditions herein set forth.  The term of this Agreement shall be five (5) years commencing on the Effective Date (the "Initial Term"), which Initial Term shall be renewed for successive terms of twelve (12) months (each a "Renewal Term"), upon the mutual, written agreement of [People's Insurance] and [Cox], unless terminated as herein provided.
>
> . . .
>
> 3. <u>Duties</u>.  [Cox] shall perform services as a Producer in the Commercial Division of [People's Insurance] with the title of Senior Vice President. [Cox] shall be subject to the rules and policies of [People's Insurance] as they pertain to Producers and as adopted from time to time by [People's Insurance]. [Cox] shall report to and be under the supervision of such individuals as the President of [People's Insurance] shall direct from time to time. [Cox] shall (i) devote [Cox's] full business time and best efforts to promote the interest and success of [People's Insurance]; (ii) perform [Cox's] duties and responsibilities hereunder; and (iii) be in compliance with all applicable laws, regulations, and regulatory guidance and the rules and policies of [People's Insurance] in all material respects. [Cox] shall not work as an employee or consultant for any other employer. [Cox] pledges [his] careful avoidance of personal acts, habits and usages which might injure in any way, directly or indirectly, the business reputation of [People's Insurance].
>
> . . .
>
> 11. <u>Termination of Employment</u>.  Notwithstanding anything contained in this Agreement to the contrary, the employment of [Cox] shall terminate upon

the occurrence of the earliest of the following events: (i) the death of [Cox]; (ii) the total disability of [Cox]; (iii) the termination of [Cox's] employment by either party (X) as of the date of the Initial Term, or (Y) during any succeeding Renewal Term; provided that in either case, written notice of such termination shall have been delivered to the other party at least thirty (30) days prior to such termination date; (iv) the termination of [Cox's] employment by mutual agreement; (v) the bankruptcy, receivership or dissolution of [People's Insurance] or the cessation of business by [People's Insurance]; and (vi) the termination of [Cox's] employment by [People's Insurance] for Just Cause.

20. The Employment Agreement also includes (in Section 14) certain restrictive covenants, which apply both during and after Cox's term of employment. Like the Eagle APA, the Employment Agreement's restrictive covenants include restrictions on: competition in and around Raynham, MA; solicitation of certain People's Insurance policyholders, clients, and employees; and the unauthorized use or disclosure of People's Insurance's confidential information.

21. The Employment Agreement further provides that Cox "will be released from the restrictions and covenants set forth in . . . Section 14" in the event of "the bankruptcy, receivership or dissolution of [People's Insurance] or the cessation of business by [People's Insurance]."

22. Following execution of the Eagle APA and Employment Agreement, Cox became a Producer for People's Insurance, with the title of Senior Vice President. In this role, Cox had substantial responsibility for marketing People's Insurance's products and services and managing People's Insurance's customer relationships. Cox solicited business, provided quotes and proposals to current and prospective customers, and, once policies were in place, provided day-to-day support as necessary. In addition, Cox was responsible for establishing and maintaining customer relationships to foster policy renewals as policies expired. In essence, Cox was the "face" of People's Insurance to its current and prospective customers in Massachusetts.

23. People's Insurance provides employees who sell insurance products and services with substantial resources, including access to People's Insurance's confidential business and

customer information, and to its goodwill with its customers and employees. Cox, as a People's Insurance employee, had access to this confidential, proprietary, and trade secret information, and to People's Insurance's goodwill with its customers and employees.

24.     Cox became an employee of People's Insurance in April 2016, and he has remained a People's Insurance employee since that time.

25.     Cox has been paid handsomely throughout his employment at People's Insurance, earning a minimum annual salary of $275,000, as well as at least approximately $1.4 million in incentive compensation.

26.     During his employment by People's Insurance, Cox has worked in the same location in Raynham, MA as he worked for Eagle prior to his sale of Eagle's assets to People's Insurance.

27.     During his employment by People's Insurance, Cox has been the only producer employed by People's Insurance in the Raynham, MA area, and he continued to manage the book of business that he sold to People's Insurance for approximately $2.4 million.  As such, his continued employment was (and is) essential to People's Insurance's business and relationships in the area, and the purported termination of his employment, in violation of the Employment Agreement, will cause Plaintiff irreparable harm and substantial monetary loss.

**AssuredPartners' Purchase of People's Insurance**

28.     On or about September 22, 2020 and September 23, 2020, AssuredPartners purchased People's Insurance's stock from People's Insurance's former parent company, People's Bank, for $120 million. Shortly thereafter, AssuredPartners and People's Bank announced that the transaction would close effective November 2, 2020.

29.     On November 2, 2020, the sale of People's Insurance to AssuredPartners closed.

30. Since AssuredPartners purchased the stock of People's Insurance from People's Bank, People's Insurance has continued to operate as an ongoing business concern.

31. People's Insurance continues to be listed as an active entity with the Secretary of State's offices in both the Commonwealth of Massachusetts and the State of Connecticut.

32. Insurance policies are sold on behalf of People's Insurance.

33. People's Insurance holds the appropriate licenses necessary to sell insurance.

34. People's Insurance is a party to contracts with insurance carriers necessary to sell insurance.

35. People's Insurance's contractual rights and duties survived the sale and remain in People's Insurance's name.

36. People's Insurance's employees are still paid by People's Insurance, using an Employer Identification Number issued to People's Insurance.  People's Insurance's employees all have the same jobs, duties, and responsibilities that they had before the stock sale.

37. In short, People's Insurance is an active legal entity and ongoing business concern; its existence, employee relationships, and contractual rights and obligations were not affected by People's Bank's sale of People's Insurance's stock to AssuredPartners.

**Cox's Resignation and Additional Threatened Breaches**

38. Following the announcement of AssuredPartners' purchase of People's Insurance, upon information and belief, Cox decided to use the impending sale of People's Insurance as an excuse to terminate his employment with People's Insurance and to begin selling insurance products independently or on behalf of a competitor, in violation of the APA and the Employment Agreement.

39. On November 2, 2020, Cox's attorney, Mr. Torres, wrote to the president of People's Bank to advise that Cox "is no longer employed by [People's Insurance] or [People's Bank]." According to Mr. Torres:

> The Employment Agreement that Mr. Cox entered with [People's Insurance] in conjunction with the APA provided in Section 11 that Mr. Cox's employment with [People's Insurance] would terminate upon "the cessation of business by [People's Insurance]." Therefore, [People's Insurance's] sale of its assets and ceasing its participation in the insurance agency business triggered the termination of Mr. Cox's employment with [People's Insurance]. This letter constitutes formal confirmation of the termination.
>
> Please also note that the "cessation of the business of [People's Insurance]" Mr. Cox is "released from the restrictions and covenants set forth in Section 14 of the Employment Agreement." Likewise, under Section 5.8.6 of the APA, as [People's Insurance] has "ceas[ed] engaging in the insurance agency business" Mr. Cox (and Kelly Cox) are "relieved and excused from adhering to the obligations set forth in the restrictive covenants set forth in this Section 5.8."

A true and accurate copy of this November 2, 2020 letter to People's Bank is attached hereto as Exhibit 1.

40. On November 3, 2020, counsel for People's Insurance and AssuredPartners wrote to Mr. Torres to advise that his and his client's understanding of the sale of People's Insurance to AssuredPartners was mistaken: the sale was a stock transfer, and thus, Cox's obligations under the APA and Employment Agreement were unaffected by the sale:

> I wanted to clear up any misunderstanding regarding the Transaction. The Transaction was not an asset purchase, but rather, a stock purchase. [People's Insurance] remains an ongoing business concern, continues to conduct business, and will continue to do so. *See Black's Law Dictionary 340 (6th ed. 1990)* ("It is a basic tenet of corporate law that a change in stock ownership is merely a transfer of shareholder rights which does not, in and of itself, normally affect the existence of the corporate entity.").
>
> Given that [People's Insurance] remains an ongoing business concern, if Mr. Cox was to terminate his employment, as is suggested in your letter, he would be in breach of the Employment Agreement, as well as the Asset Purchase Agreement, he entered into with [People's Insurance] on April 6, 2016. As you are likely aware, absent the occurrence of one of the events set forth in Section [11] of the Employment Agreement, *Term[ination] of Employment*, Mr. Cox is

9

> contractually obligated to remain with [People's Insurance] through April 6, 2021, the end of the five year Initial Term. Moreover, even if Mr. Cox were to terminate his employment at the conclusion of this Initial Term, he is contractually obligated to provide [People's Insurance] with thirty (30) days' notice of his decision not to renew the Employment Agreement. Given that Mr. Cox is the only Producer employed in this Massachusetts location, the resulting damages from this breach are likely to be substantial.
>
> In addition, Mr. Cox remains subject to the restrictive covenants set forth in both the Asset Purchase Agreement and the Employment Agreement. In both the Asset Purchase Agreement and the Employment Agreement, Mr. Cox agreed not to unfairly compete against [People's Insurance], including, during the term of his employment and for a period of sixty (60) months from the termination of his employment. In particular, under both the Asset Purchase Agreement and the Employment Agreement, Mr. Cox agreed not to, for (60) months from the termination of his employment, sell insurance policies or insurance related products he sold on behalf of [People's Insurance] on behalf of a competitor, solicit or accept business from customers he worked with while employed by [People's Insurance], or interfere with the relationships between [People's Insurance] and its employees. Mr. Cox also agreed not to use, and to maintain as confidential, [People's Insurance's] confidential, proprietary and trade secret information, including its customer information. . . .

A true and accurate copy of this November 3, 2020 letter is attached hereto as Exhibit 2.

41. Following the parties' exchange of correspondence, Cox has continued to maintain that People's Insurance is not an ongoing business operation, and denies that he owes any further obligations to People's Insurance under the APA or his Employment Agreement.

## CAUSES OF ACTION

### Count I
### Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201, 2202

42. People's Insurance incorporates the foregoing allegations as though fully restated herein.

43. An actual and justiciable controversy exists between People's Insurance and Cox concerning the question of whether the transfer of People's Insurance's stock to AssuredPartners triggered a right for Cox to cancel his obligations under the Eagle APA and the Employment Agreement.

44. Cox has maintained that People's Insurance is no longer an ongoing business operation and active legal entity, and denies that he owes any obligations to People's Insurance under the Eagle APA and his Employment Agreement.

45. People's Insurance maintains that People's Insurance is an ongoing business operation and active legal entity, and thus, Cox continues to owe obligations to People's Insurance under the Eagle APA and the Employment Agreement.

46. Pursuant to 28 U.S.C. § 2201, People's Insurance is entitled to a declaration that the transfer of People's Insurance's stock to AssuredPartners did not trigger a right for Cox to cancel his obligations under the Eagle APA and the Employment Agreement.

47. Pursuant to 28 U.S.C. § 2202, People's Insurance is entitled to any "further necessary or proper relief" as may be warranted based upon the Court's declaration of People's Insurance's rights.

## Count II
## Breach of Contract

48. People's Insurance incorporates the foregoing allegations as though fully restated herein.

49. The Employment Agreement between People's Insurance and Cox is valid, enforceable, and supported by substantial consideration.

50. By his actions described above, including by purporting to terminate his employment relationship with People's Insurance, Cox has breached his obligations to People's Insurance under the Employment Agreement.

51. As a direct and proximate result of this actual breach of Cox's contractual obligations, People's Insurance has suffered and will continue to suffer irreparable harm and monetary damages.

## Count III
## Breach of the Covenant of Good Faith and Fair Dealing

52. People's Insurance incorporates the foregoing allegations as though fully restated herein.

53. The Eagle APA and the Employment Agreement between People's Insurance and Cox each contains an implied covenant of good faith and fair dealing.

54. By his actions described above, Cox has breached the covenants of good faith and fair dealing contained in the Eagle APA and the Employment Agreement.

55. As a direct and proximate result of those actual breaches of the covenants of good faith and fair dealing, People's Insurance has suffered and will continue to suffer irreparable harm and monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff People's United Insurance Agency, Inc. respectfully requests that the Court:

A. Enter judgment in People's Insurance's favor on each cause of action set forth above;

B. Award People's Insurance monetary damages, in an amount to be proven at trial, for the economic injuries that it has sustained as a consequence of Cox's actions;

C. Enter a declaration that the transfer of People's Insurance's stock from People's Bank to AssuredPartners did not trigger a right for Cox to cancel his obligations under the Eagle APA and the Employment Agreement.

D. Enter an order granting any "further necessary or proper relief" as may be warranted based upon the Court's declaration of People's Insurance's rights;

E. Order that Cox be enjoined from breaching his obligations to People's Insurance under the Employment Agreement and the APA;

F. Award People's Insurance its costs, expenses, and attorneys' fees incurred as a result of this action; and

G. Award People's Insurance such other and further relief as the Court deems just, equitable, and appropriate.

Respectfully submitted,

**PEOPLE'S UNITED INSURANCE AGENCY, INC.,**

By its attorneys,

*/s/ Patrick M. Curran, Jr.*
Patrick M. Curran, Jr. (BBO#659322)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: (617) 994-5700
Facsimile: (617) 994-5701
patrick.curran@ogletree.com

Dated: November 6, 2020

44883765.1